# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )        **Case No. 08-40638-JDP**
**DANNY R. BROWN and**                   )
**CINDY ANN BROWN,**                     )        **Chapter 13**
                                         )
                        Debtors.         )
_____          )

## MEMORANDUM OF DECISION ON U. S. TRUSTEE'S MOTION FOR SANCTIONS AND RELATED MATTERS
_____

## I.    INTRODUCTION

The United States Trustee ("UST"), through its Motion to Disallow Fees of Thomas Francis Hale and Impose Sanctions, Doc. No. 43 (the "Sanction Motion"), raises questions about the conduct of attorney Tom Hale in connection with the instant chapter 13 case of Danny and Cindy Ann Brown. The UST contends that Hale's conduct in the Brown's case exemplifies his conduct in numerous other cases and, thus, the issues presented extend beyond the four corners of the Browns' case. This assertion is true. The context of this matter requires the Court to consider prior decisions of this Court, the Idaho District Court, the Ninth Circuit Bankruptcy Appellate Panel "("BAP"), and the Ninth Circuit Court of Appeals.

As a result of an April 28, 2009 hearing on the Sanction Motion and on the

MEMORANDUM OF DECISION - 1

evidence and record presented, and for the reasons discussed herein, the Court will grant relief to the UST on its Sanction Motion.

Such relief includes this Court's reaffirmation of the extant injunction against Hale's improper practices, entered in April, 2004, and affirmed by the Ninth Circuit Court of Appeals in *Hale v. United States Tr.*, 509 F.3d 1139 (9th Cir. 2007). Moreover, given Hale's purposeful and obdurate refusal to comply with that injunction, in the instant case and others, the Court finds and concludes that Hale should be disbarred from any practice before this Court. To be clear, this disbarment would be from practice before the federal courts of the District of Idaho. Hale's status to practice in state court is a matter for the Idaho State Bar and the Idaho Supreme Court.

This Court has the authority under its inherent powers to render such a decision. *See Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052 (9th Cir. 2009). However, in this District, local rules governing sanction or discipline in the nature of disbarment require this Court to make a report and recommendation to the district court for the initiation of disciplinary proceedings, and such rules establish the process to be followed. *See* LBR 9010.1(h); Dist. Idaho Loc. Civ. R. 83.5. This Decision not only addresses the UST's Sanction Motion, it also provides the

MEMORANDUM OF DECISION - 2

details supporting such a report and recommendation.[1]

## II.   BACKGROUND AND FACTS

The background and relevant facts come from evidence introduced at the April 28 hearing and from this Court's files and records.[2]  Additionally, several aspects are set forth in prior reported decisions of this and other courts.

### A.   *In re Castorena*

In 2001, after a lengthy period of litigation, this Court issued a decision in 19 cases consolidated for hearing under the lead case of *In re Castorena*, 270 B.R. 504 (Bankr. D. Idaho 2001).  The decision rejected, on multiple grounds, Hale's practice of providing "limited pre-filing legal services" to debtors and sending his clients into their bankruptcy cases as pro se litigants.  Despite whatever theoretical support the "unbundling" of legal services might have, Hale's approach abdicated any pretense of adequate counseling and advice to his "clients" and ignored the ethical requirement of "informed consent" by the clients to this approach to representation.[3]  Hale was required to disgorge fees of $125.00 in each of 19 cases

---

[1]  This Decision also constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052, 9014.

[2]  Judicial notice is taken of the Court's public files, dockets and records under Fed. R. Evid. 201.

[3]  The decision identified several other problems with Hale's approach.

MEMORANDUM OF DECISION - 3

under § 329(b).[4]  The Court also in *Castorena* outlined the duties that are

inherently and necessarily assumed when an attorney agrees to represent

individuals in bankruptcy cases.[5]

Hale appealed one of the nineteen cases dealt with in *Castorena*.  *See*

*Christopher and Peggy Baker*, Case No. 01-40806 (Bankr. D. Idaho).  In an

August, 2002, unpublished memorandum, the BAP affirmed this Court.[6]

**B.    *In re Jones***

In 2001, Eric and Selena Jones filed what was asserted to be a pro se

chapter 7 petition, along with schedules and statements, commencing Case No.

01-02853 in this District.  However, Hale had received $250.00 from the Jones for

preparing those documents and representing them.  Hale filed a Rule 2016(b)

disclosure[7] reflecting the payment.  However, that document asserted no legal

---

[4]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101-1532.

[5]  *Castorena* followed earlier litigation involving Hale's practices.  *See*, *e.g.*, *Hale v. United States Tr. (In re Basham)*, 208 B.R. 926, 933 (9th Cir. BAP 1997) (affirming "bankruptcy court's finding that [Hale's] fees were unreasonable given the lack of contemporaneous time records *and the failure to provide competent and complete representation*" to debtors (emphasis added)).

[6]  *Hale v. United States Tr. (In re Baker)*, BAP No. ID-02-1013-MoBMa (9th Cir. BAP Aug. 29, 2002) ("Baker").

[7]  Fed. R. Bankr. P. 2016(b) requires "Every attorney for debtor, whether or not the attorney applies for compensation, [to] file and transmit to the United States trustee within 15 days after the order for relief . . . the statement required by § 329 of the Code[.]"  The Rule also requires the filing and service of a supplemental statement within 15 days of any payment or agreement not previously disclosed.  The referenced Code section, § 329, provides:

(continued...)

MEMORANDUM OF DECISION - 4

services had been contracted for other than a "limited amount of pre-filing legal services" and it expressly excluded any obligation of Hale to appear at the meeting of creditors under § 341(a).

The Court commenced a § 329(b) inquiry as to the fees Hale charged and collected in the Jones case.[8]  The UST commenced a sanction proceeding against Hale in the same case.

Following rulings on numerous motions by Hale seeking to vacate hearings, continue hearings, require the Court's recusal, demand a jury trial, and obtain sundry other relief, the hearing date in Jones arrived.  Hale, in eleventh hour filings, claimed medical issues would prevent his appearance, and he did not appear.  The hearing occurred; the Court heard testimony from debtor Selina Jones

---

[7](...continued)
(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

[8]  Section 329(b), at issue in *Jones* as well as *Castorena*, and raised here by the UST under the Sanction Motion, provides:

 (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –
>          (1) the estate, if the property transferred –
>                    (A) would have been property of the estate; or
>                    (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>          (2) the entity that made such payment.

MEMORANDUM OF DECISION - 5

and from the chapter 7 trustee; and the matters were taken under advisement.

Hale's motion to continue or vacate the hearing was denied. Hale's recusal motion and jury trial demand had been previously denied in an earlier written decision, reported as *In re Jones*, 2002 WL 818275 (Bankr. D. Idaho Apr. 4, 2002).[9] Hale's renewed recusal motion and jury trial demand in his eleventh hour pleadings were also denied.

The merits of the § 329(b) and sanctions issues were addressed in a written decision. *See* Case No. 01-02853 at Doc. No. 90 (the "Jones Decision").[10] The Jones Decision noted that Hale had not conformed his practice to the ruling in *Castorena*. It further found that Hale's assertions of informed client consent to unbundled services were proven to be false in the Jones' case, and that the Jones were misled as to the scope and nature of services that would be provided. It concluded that no fees would be allowed and all fees previously paid would be disgorged.

In addition, the Court found that the sanctions, monetary and otherwise, imposed in *Castorena* had not had any appreciable impact on Hale's subsequent conduct. It concluded that the continuing efforts required to ensure Hale met his

---

[9]  The same recusal contentions had been raised in *Castorena* and denied. That ruling was affirmed by the BAP in *Baker*.

[10]  A copy of the March 19, 2004 Jones Decision was introduced at hearing as Ex. 16, and its related April 6, 2004 order as Ex. 17.

MEMORANDUM OF DECISION - 6

legal and professional obligations to his clients was imposing an unreasonable

burden on the Court, UST, panel and standing trustees, and the others in the

bankruptcy system. As a result, the Court concluded:

> Unable or unwilling to conform his conduct to the requirements established by the Court's prior decisions and rulings, and to the standards by which all other debtors' counsel in the District abide, Hale has earned special restrictions, by express order, on his practice. Though unusual, the relief sought by the UST is necessary. The Court will therefore enter an order restricting and limiting Hale's legal practice in the following regards:

> Hale shall not file, nor shall he prepare or cause to be prepared for filing by a debtor, a bankruptcy petition unless Hale signs said petition.

> Further, Hale shall not file, not shall he assist a debtor as counsel in filing, any bankruptcy petition unless Hale commits to such debtor to meet the ethical and professional obligations of a debtor's attorney and provide the reasonable and necessary services required to properly represent a debtor in a bankruptcy case. The required professional obligations include Hale's appearance at § 341(a) meetings. Other obligations and services were described in *Castorena* [11]. Such a commitment must be reflected in a written engagement or representation agreement, which the debtor(s) and Hale must sign.

Jones Decision at 32-33.

## C.    *Jones* appeals

An order was entered on the Jones Decision on April 6, 2004. Hale

appealed that order, as well as this Court's rulings denying the motion to recuse

---

[11]  The quoted excerpt from *Castorena*, 270 B.R. at 530, describing those services and duties, is here omitted

MEMORANDUM OF DECISION - 7

and the demand for jury trial. In that appeal, the District Court denied Hale's request for a stay of the order. *See* Case No. 1:04-CV-00289-EJL at Doc. 3 (Jun. 18, 2004). And ultimately, the District Court affirmed on all issues. *Id.* at Doc. 13 (also reported at 2006 WL 694639 (D. Idaho Mar. 15, 2006)).

Hale appealed to the Ninth Circuit. On December 10, 2007, the Ninth Circuit affirmed. *Hale v. United States Tr.*, 509 F.3d 1139 (9th Cir. 2007).

The Ninth Circuit noted that the recusal issue and the Court's conclusion that Rule 9011(a) was violated were not appealed and were therefore waived by Hale. *Id.* at 1145-46. It rejected Hale's argument that he was entitled to a jury trial on the question of the reasonableness of the fees he charged or the Court's review thereof. *Id.* at 1146-47. It found no abuse of discretion in the ordered disgorgement of Hale's fees. *Id.* at 1147.

Finally, the Ninth Circuit ruled that there was no abuse of discretion in this Court's entry of the sanction against Hale restricting his practice. *Id.* at 1148-49. It said:

> We agree with the bankruptcy court that it should "not countenance Hale's exclusion of critical and necessary services, or endorse the pretense of adequately advised and informed consent in Hale's bankruptcy cases." Although the court effectively barred Hale from assisting pro se debtors in a limited manner that allows debtors to remain pro se, the court ordered those sanctions in response to specific and repeated acts of incompetent and irresponsible representation. Under the specific facts of this case, we cannot say that the bankruptcy court abused its inherent power to impose sanctions.

MEMORANDUM OF DECISION - 8

*Id.* at 1148-49.

According to the Ninth Circuit Court of Appeal's docket, Hale did not request a stay pending appeal until that court deemed a January, 2007 document as a motion to stay the bankruptcy court's judgment, and it simultaneously denied the same. *See* Appeal No. 06-35349, Doc. No. 33 (Oct. 2, 2007).

### D.   Continuation of prohibited practices.

Though there was no stay of this Court's April, 2004 sanction order imposing the injunction, Hale never complied with it.  For example, the Court's public records reflect at least 58 cases filed in 2007 by allegedly pro se debtors who had paid Hale for legal assistance.  In those cases, Hale expressly disavowed his obligation to appear at the § 341(a) meeting, or to provide other post-filing services.  He also did not sign the debtors' petitions as counsel.[12]

In 2008, the Court's records reflect another 26 debtors received Hale's prebankruptcy "services" and filed their cases pro se.  The UST, at the April 28 hearing, presented evidence through a paralegal specialist, Ms. Wolfe, regarding these 26 cases.[13]  Exhibit 19 summarizes the results of Ms. Wolfe's evaluation of

---

[12]   The cases are identifiable by Hale's form of 2016(b) disclosure and the language used in the petitions disavowing that there is an attorney of record.  *See* Ex. 6, Ex. 8.  Both such documents are discussed below.

[13]   The UST could have addressed in its evidence all the Hale-assisted cases filed after the April, 2004 sanction order imposing the injunction was entered.  The Court assumes the UST

(continued...)

MEMORANDUM OF DECISION - 9

the files in those cases, including her review of certified copies of the petitions and

2016(b) fee disclosures.  This review and evaluation established that in none of

these 26 cases did Hale sign the petition as counsel.  Instead, though Hale signed

on a line in Exhibit B to the petition reading "Signature of Attorney for Debtor(s)"

he inserted the handwritten word "not" in the language of the official form.  *See*,

*e.g.*, Ex. 6 at 2 (thus reading "<u>Not</u> the attorney for the petitioner . . ." rather than "I,

the attorney . . .").  He also caused a typewritten insertion to appear, in the section

of the official form of petition for signature of attorney on the following page, that

states "Debtor not represented by attorney."  *Id.* at 3.

The intent that his signature not be construed as that of the debtors'

attorney is evidenced further by the 2016(b) disclosure Hale filed in each case.

*See*, *e.g.*, Ex. 8.  It states, among other things:

> (1)   I certify that I am an attorney that has rendered a limited
> amount of PRE-FILING legal services PURSUANT TO LOCAL
> RULE 9010.1, to the above-named Debtor(s).   NO FURTHER
> SERVICES HAVE BEEN AGREED TO, OR CONTRACTED FOR,
> BETWEEN THE PARTIES.   FURTHER SERVICES MAY BE
> CONTRACTED FOR AT MY HOURLY RATE OF $150.00,
> PARALEGAL $60.00 PER HOUR, costs as listed 1-14 in fee
> agreement, copies $1.00 per page, documents prepared $1.00 per page,
> plus postage (not all inclusive).  I WILL MONITOR THE § 341
> MEETING OF CREDITORS PRO BONO (NO CHARGE).

---

[13] (...continued)

elected to focus on the 2008 cases because they were filed after the Ninth Circuit's affirmation.
In any event, the documents introduced and Ms. Wolfe's testimony were adequate to show Hale's
deliberate and consistent behavior in willful contravention of the 2004 order.

MEMORANDUM OF DECISION - 10

*Id.* at 1.[14]

Ms. Wolfe's analysis, and the minutes of the § 341(a) meetings in each of

these 26 cases in 2008, reflect that Hale failed to appear as counsel at the debtors'

§ 341(a) meetings.[15]

Hale and his clients signed the 2016(b) statements.  However, the language

of the statements does not comply with the injunctive order entered in *Jones*

requiring that Hale and his client execute a written fee agreement that obligates

Hale to perform the pre-filing and post-filing duties and responsibilities as

required in *Castorena* and specified in the Jones Decision.  Instead, the 2016(b)

statements continue to assert Hale's rejected and sanctioned practice of limiting

his role to "pre-filing services" with his clients subsequently filing and appearing

in the cases as pro se debtors.  *See* Ex. 8 at 1, 6-7.[16]

---

[14]   In part (2)(d) of this statement, Hale notes that the services he agreed to provide
include "NO representation of the debtor(s), who have appeared pro se, at the § 341 meeting of
creditors conducted by the Trustee" and refers to this paragraph (1) for "exceptions," which is
apparently meant to reference the pro bono "monitoring."  *See* Ex. 8 at 1.

[15]   Whether Hale was at any of these meetings to "monitor" them is not established by the
minutes.  However, Ms. Brown testified that she never met Hale at any time, including her
creditors' meeting, and the chapter 13 trustee, Ms. McCallister, testified that she also had never
met Hale nor had he ever appeared at § 341(a) meetings she conducted.  Even if Hale came to any
of these meetings as an unannounced and unidentified observer in the back of the room, to
"monitor" or otherwise, he violated the injunction imposed in the Jones Decision to represent, as
counsel at such meetings, the debtors who retained him.

[16]   Exhibit 8 is the 2016(b) disclosure in the Browns' case.  Inserted into the standard
2016(b) language used by Hale in chapter 7 cases is a modified form of the "Model Retention
Agreement" or MRA required by this Court for use in chapter 13 cases by counsel seeking a
presumptively allowable fixed fee under LBR 2016.1.  However, the language of the MRA is
(continued...)

MEMORANDUM OF DECISION - 11

In these 26 cases, Hale received legal fees of $300.00 (3 cases); $375.00

(16 cases); $400.00 (5 cases); $700.00 (1 case), for a total of $9,600.00.  Ex. 19.[17]

These 26 cases surveyed by the UST do not include that of the Browns, in

which Hale also failed to sign the petition as counsel, also failed to enter into the

required representation agreements with the debtors, and also failed to appear at

their § 341(a) meeting.  Hale disclosed in his 2016(b) statement receiving $400.00

from the Browns prior to filing.  Ex. 8 at 1.  However, in fact, he received a total

of $800.00 from the Browns, as discussed further below.  Hale did not comply

with § 329(a) and Rule 2016(b)'s requirement to disclose this additional $400.00

payment.

### E.    The Browns' case

The testimony of Cindy Ann Brown establishes the following.

Ms. Brown is a high school graduate with one year of post-high school

education.  She worked as a public transportation driver until taking medical

leave.  Mr. Brown left high school before completion, and works at a building

supply company.  The Browns live in Idaho Falls, Idaho.

---

[16] (...continued)
altered so as to bind the attorney to the performance of the described duties only "IF RETAINED
TO REPRESENT THE DEBTOR FOR OTHER THAN LIMITED SERVICES, AS OUTLINED
IN THE BEGINNING OF THIS DISCLOSURE OF COMPENSATION."  *Id.* at 2, 4, 5.

[17]   If the lowest fee/case figure of $300.00 is assumed for all 58 of the cases filed in 2007,
Hale received $17,400.00 for the cases filed in violation of the injunction – at least that the Court
has identified – in that year.

MEMORANDUM OF DECISION - 12

In 2005, serious medical issues led to Ms. Brown's hospitalization for almost a month, and generated $96,000.00 in uninsured medical debt. The Browns were threatened with garnishment on certain of these debts, and they determined they should file for bankruptcy relief.

They believed they needed the assistance of an attorney. They saw a newspaper advertisement for chapter 7 and 13 bankruptcies placed by Hale, doing business as "The Law Clinic" in Shelley, Idaho. They called the number indicated in the ad and left a message on an answering machine. On a Sunday evening, a man called back and identified himself to Ms. Brown as Tom Hale.

The call lasted only ten minutes. In fact, Ms. Brown testified that none of her conversations with Hale over the phone lasted any longer than that. She also testified she never met Hale in person.

In the first conversation, Ms. Brown told Hale she and her husband needed an attorney to help with filing a bankruptcy, and Hale agreed to represent them. Hale asked her to prepare a list of all their creditors and debts, to gather three months' worth of pay stubs, and to mail that material to him. He also quoted a $400.00 fee for representing them. Ms. Brown mentioned that she and her husband had filed bankruptcy previously, to which Hale replied that he did not

MEMORANDUM OF DECISION - 13

need the details of that filing and instead could "look it up."[18]  Hale also

mentioned something about a "plan" that he would create for them.

She mailed the material he requested and, ten to fourteen days later,

received a call from Hale.  She says Hale instructed her to file the bankruptcy

personally with the clerk of the Court in Pocatello, Idaho, pay the filing fee, and

then take "the paper" she would receive to the sheriff's office in order to stop the

garnishment.  Not entirely certain what she was doing, Ms. Brown appeared in

Pocatello to pay the fee as instructed, but she had no petition or other paperwork

in hand to file.  When told that the fee alone would not commence a bankruptcy,

Ms. Brown became distraught, having taken a day off work and spent some of her

last cash for the gas needed to drive from her residence in Idaho Falls to Pocatello.

She prepared a handwritten petition, signed her name and signed "for" her

husband who had not accompanied her, paid the fee and filed the case.  *See* Ex. 2

(petition filed July 28, 2008).  She testified that Hale, by telephone, told her that

she could sign her husband's name.

Following receipt of a July 28 "confirmation notice" from the Court

regarding the missing plan, Ex. 3, and a July 28 "deficiency notice" regarding the

missing schedules, statements and other documents, Ex. 4 at 2, Ms. Brown

---

[18]  Interestingly, Hale argues in the Dismissal Motion, Doc. No. 70, that "[he] was misled by the debtors as to how many bankruptcies they had each filed, and the dates of the filings."  *Id.* at 1.

MEMORANDUM OF DECISION - 14

prepared a letter to the Court stating:

> I would like to ask for you to please consider granting me a 15 day
> extension for preparing my bankruptcy paper work with the court. I
> was unable to find an attorney to help me file the chapter 13 paper
> work. My case number is 08-40638-JDP.

Ex. 4 at 1. Ms. Brown testified that Hale instructed her to prepare this letter and

provided the language she used.

In August, Hale instructed Ms. Brown to go to the "Movie Gallery,"

apparently a DVD and video rental business in Shelley, Idaho, and pick up the

paperwork he had prepared for the Browns' case. She did so, retrieving a large

package of materials. She identified Ex. 6 – the "amended" petition, schedules,

statements and other materials filed with the Court on August 24 – as what she

picked up in Shelley. Hale never explained these documents to, and never

reviewed them with, the Browns. He never explained the differences between

chapter 7 and chapter 13, except to tell them that chapter 13 had a "monthly

payment" involved. He never discussed with them the chapter 13 plan he

prepared.

Hale did tell Ms. Brown that there would be a meeting of creditors or "first

meeting." According to Ms. Brown's testimony, Hale stressed that the Browns

should not talk with or trust the chapter 13 Trustee, Kathleen McCallister, who

would conduct that meeting. Ms. Brown testified that Hale said the Trustee "was

MEMORANDUM OF DECISION - 15

not our friend and will hurt us"  and would "chew us up and spit us out."[19]

Among the materials Ms. Brown picked up at the video store was Ex. 8, Hale's form of fee disclosure.  Its language purports to disavow Hale's duty to appear on behalf of the debtors in the bankruptcy case and tells them they are appearing pro se.[20]  But, the Browns did not understand what the term pro se meant.  They believed Hale was their attorney, and he would appear for them in the case, including at the creditors' meeting.  Neither this form nor Hale's position on limiting services was adequately explained to Ms. Brown or her husband; Ms. Brown testified that Hale told her the language in Exhibit 8 about providing no further services was "just legal proceedings" and not to worry about it.[21]  The Browns signed this form, as they did all the rest of the documents in the package they picked up at the video store.[22]

---

[19]  Ms. Brown also testified that Hale was wrong, and the Trustee was friendly and helpful in her dealings with the Browns.

[20]  The package also contained a § 342(b) notice prepared for and signed by Debtors.  *See* Ex. 6 at 42-43.  It was signed by Hale over the line "signature of attorney" but above the line for "printed name of attorney" the words "pro se" are hand-written.  *Id.* at 43.

[21]  In regard to the language in this form about "confidential communication" between Hale and the Browns and regarding "attorney-client privilege," *see* Ex. 8 at 6-7, Hale simply repeated his admonition that the debtors should not talk to the Trustee.

[22]  A transcript of the Browns' examination at the § 341(a) meeting was introduced.  *See* Ex. 10.  Among other things, Ms. Brown testified:
– that Hale "kinda sorta" helped prepare the petition for an agreed fee of $400.00 but, when Hale decided a chapter 13 was needed instead of a chapter 7, he charged and received another $400.00 (*id.* at 4-6);
– that Hale "didn't go over the paperwork with [the Browns]" including their proposed chapter 13 plan (*id.* at 6);

(continued...)

MEMORANDUM OF DECISION - 16

After the Trustee identified numerous problems with the proposed plan, the Browns asked the Court at a November, 2008 confirmation hearing for a continuance, indicating they were "attempting to retain counsel." *See* Doc. No. 38. Ms. Brown also remembers advising the Court at one of the confirmation hearings that they were having difficulty contacting Hale.[23] The Browns began looking for another attorney to help them, though most required substantial retainers to step into the ongoing case. Finally, after their unsuccessful chapter 13 hearing in December, 2008, an attorney, Mr. Gabert, offered to assist them. He appeared in January, 2009, and he filed amended schedules, statements and an amended chapter 13 plan for the debtors.

Ms. Brown admitted saying, following Mr. Gabert's appearance in the case, that she wanted to get back the money paid to Hale, and that he "stole" that money, which included an additional $400.00 over the first $400.00 fee paid.[24]

---

[22] (...continued)
– that Hale 'told us that he would help us through the whole process, between filing the papers and getting us prepared for court. And so that's what we assumed that he was going to do, and he has not done any of that." (*id.*);
– that Hale told the Browns "not to worry" about the Trustee's demand for an amended schedule (*id.* at 7);
– that Hale did not advise the Browns of the need to have all tax filings current (*id.* at 11-12).

[23]  Ms. Brown testified that from the time of the first continuance of confirmation hearing she left three voice mail messages a week on Hale's phone. All contact with Hale had been by phone; there was never a personal meeting. Ms. Brown also testified that once a male voice answered The Law Clinic's phone and said that Hale was not there, placed Ms. Brown on hold, and then Hale came on the line. Ms. Brown recognized both male voices as Hale's.

[24]  All $800.00 was borrowed from her mother-in-law.

MEMORANDUM OF DECISION - 17

She also admitted saying she would like to see him disbarred.  Hale sent Gabert a

letter cautioning him about Ms. Brown's "inflammatory and negative statements."

Ex. 21.

The Trustee, Ms. McCallister, testified that the Browns' case was typical of

other Hale-assisted "pro se" chapter 13 debtors she has been assigned.  In those

cases, she testified, motions for extension of time to file schedules and statements

were regularly required.  Petitions filed without plans led to delays and required

debtors, rather than the Court, to serve copies of the plans.

The Trustee has come to recognize the Hale-prepared petitions that include

the "not" insertion in the attorney declaration area, *see*, *e.g.*, Ex. 6 at 2, and the

typed insertion on the attorney signature portion of the petition that states "Debtor

not represented by attorney," *id.* at 3.  She also recognizes the type of fee

disclosure form Hale signs and uses as a regular and routine part of his assisted

pro se cases.  Ex. 8.

The Trustee indicated the deficiencies she identified and advised the

Browns about were not addressed until Gabert appeared.  However, the difficulties

with the case proved difficult to overcome.  The Trustee later moved to dismiss

the case, and the Court granted her motion.  The Browns sought, and then

abandoned, reconsideration of that ruling.  On May 19, 2009, the case was

MEMORANDUM OF DECISION - 18

dismissed.  *See* Doc. No. 83.[25]

### F.    The Sanction Motion and proceedings thereon

In addition to the testimony heard and documentary evidence received at the April 28 hearing on the Sanction Motion, discussed above, the procedural aspects of this case leading up to and including that hearing are material.

The UST's Sanction Motion was filed on January 6, 2009.  On February 3, 2009, the Court held a scheduling conference, at which Hale appeared.  The Sanction Motion was set – with Hale's input and agreement – for an April 28, 2009 evidentiary hearing at the United States Courthouse in Pocatello, Idaho. Doc. Nos. 54, 56.

Some months later, and only 8 days prior to hearing, on April 20, 2009, Hale filed the first of several motions to vacate or avoid the hearing.  *See* "Motion to Continue All Proceedings," Doc. No. 67.  That motion had asked for a continuation of all matters "for at least sixty (60) days" alleging as cause a May 11, 2009, trial setting in the United States' criminal prosecution of Hale and his need to spend the balance of April assisting in preparation for that trial.[26]  That

---

[25]  The dismissal order reserved jurisdiction over any issues raised by and disposition of the Sanction Motion.  *Id.*

[26]  *United States v. Hale*, Case No. 2:06-CR-00871-CW, pending before the U.S. District Court for the District of Utah.

MEMORANDUM OF DECISION - 19

argument was rejected by this Court's Order on April 21. *See* Doc. No. 68.[27]  The

only other cause for continuance asserted in this motion, the impact of possible

dismissal of the Brown's chapter 13 case, was also rejected. *Id.*

On April 22, the day after this Order, Mr. Hale filed two more motions.

His first, a "Motion to Dismiss All Proceedings," Doc. No. 70 ("Dismissal

Motion"), alleged he repaid the Browns $800.00, representing all fees paid, and

argued this eliminated any § 329(b) issue set for hearing on April 28.

Hale's second April 22 motion was an "Amended Motion to Continue All

Proceedings."  Doc. No. 71 ("Continuance Motion").  It raised several allegations

and arguments: (1) a conflicting medical appointment of Hale in Utah on April 28;

(2) the existence of a "stay" by the Utah bankruptcy court; (3) a prohibition on

Hale's testimony by reason of the privilege against self-incrimination related to his

Utah criminal trial; (4) a stay of action by the Idaho State Bar against Hale; and (5)

the impact of the Court's "notice," *see* Doc. No. 66, stating that it would evaluate

the evidence presented on the Sanction Motion under and in light of its inherent

powers and that sanctions could include Hale's potential suspension or

disbarment.

The Dismissal Motion and the Continuance Motion were addressed and

---

[27]   The Court there noted that, not only was the criminal trial setting known to Hale for
over two months prior to the filing of his motion, the Utah court's docket established that the
May 11 trial date had been vacated on April 20 and moved to a June 29 setting. *Id.* at 2-3.

MEMORANDUM OF DECISION - 20

denied in a written decision and order issued April 24, 2009. *See* Doc. No. 73.[28]

On the night of April 27, Hale filed another series of pleadings and papers.[29] These included Hale's request to appear at the April 28 hearing by telephone due to his wearing a back brace and taking pain medication after returning to Idaho from Utah on April 27 (Doc. No. 74); a motion to strike the UST's pleadings and sanction its attorney for unauthorized practice of law (Doc. No. 75); a motion to stay all proceedings until after the criminal trial in Utah was concluded because any evidence dealing with Hale's credibility or veracity could negatively impact that trial and be used for impeachment (Doc. No. 76); and a motion for recusal, a motion to vacate the hearing, and a demand for jury trial (Doc. No. 77).

**DISCUSSION AND DISPOSITION**

### A.    The pre-hearing motions

At the commencement of the April 28 hearing, the Court addressed and denied these several motions filed by Hale the evening before. Those rulings are

---

[28]   As the analysis in this decision touched on several matters, including an extended discussion of the privilege against self-incrimination and why it did not justify vacation of hearing or a blanket refusal to testify, the Court will simply incorporate that Decision by reference and without repetition here.

[29]   These papers were filed in the Court's overnight document depository in Pocatello. They were brought to the presiding judge's attention the morning of April 28 when he arrived in Pocatello after driving from Boise for the hearing scheduled to commence at noon. The filings and their timing were not unusual for Hale. The Jones Decision noted that the Court and litigants "have several times prepared for and appeared at hearings only to be advised in some fashion at the last minute that Hale will not appear." Jones Decision at 22 n.29.

MEMORANDUM OF DECISION - 21

matters of record.  They are noted here for clarity.

### 1.  Motion to strike pleadings

Hale sought to strike all the UST's pleadings on the basis that its counsel,

Assistant U.S. Trustee David Newman, is not a member of the Idaho Bar.  Hale

further alleged unauthorized practice of law.

Appearances before this Court are controlled by LBR 9010.1.  Under that

local rule:

> An attorney, not admitted to practice under this rule, who is employed
> by and representing the United States Government or any of its officers
> or agencies, may practice in this Court in all actions and proceedings
> where the attorney is:

> > (1)   A member in good standing of and eligible to practice
> > before the bar of any United States Court, or of the
> > highest court of any state or insular possession of the
> > United States and;

> > (2)   Who is of good moral character.

LBR 9010.1(c).  Mr. Newman qualifies under this provision.  His appearance is

proper.  Furthermore, Hale did not show there was any "unauthorized practice of

law."[30]

The motion alleging unauthorized practice and appearance, and seeking to

strike the UST's pleadings, Doc. No. 75, was denied at hearing.  That ruling is

reaffirmed.

---

[30]  Nor did Hale establish he would have standing to seek sanctions or other relief based
on any such unauthorized practice.

MEMORANDUM OF DECISION - 22

### 2.      Request to participate by telephone

The April 28 hearing was, from the time it was set in February, 2009, an evidentiary hearing.  Factual matters in dispute had to be, and were to be, addressed through evidence admitted in open court.  *See* Fed. R. Bankr. P. 9014(d).

Hale was aware this was an evidentiary hearing for several reasons.  First, the prior comments and rulings of the Court including those at the February scheduling conference, and in the scheduling order, Doc. No. 56, and in the April 24 order, Doc. No. 73, make it clear.  Second, the witness subpoenas issued by the UST in February, Doc. Nos. 58, 59, and the UST's witness and exhibit disclosures, Doc. No. 69, manifest it.  Third, and perhaps most significantly, Hale's own arguments about exercising his privilege against self-incrimination, as set out in his Continuance Motion, Doc. No. 71, illustrate his knowledge that evidence would be taken in open court, and that this could or would include his own testimony.  Participation by telephone was not an option.[31]

The Court is aware that part of this request is based on alleged medical issues.  Hale claimed that "wearing a back brace and my pain medication make travel and my appearance in person impossible."  Doc. No. 74 at 1.  His motion,

---

[31]  Additionally, prejudice exists from the untimely motion.  The UST's counsel and paralegal traveled from Boise to Pocatello, as did the Trustee, one of the subpoenaed witnesses.  Debtors traveled from Idaho Falls.  All were present and ready to proceed.

MEMORANDUM OF DECISION - 23

however, also alluded to his recent "travel" (*i.e.*, that he "returned to Idaho today")

after cancelling an April 28 medical appointment, apparently in Utah.[32]

While the Court is sensitive to the possibility that a continuance or vacation

of a hearing might be sought by an attorney due to illness or similar cause, Hale

has regularly and repeatedly raised the argument of medical issues, invariably in

last minute filings.[33]  Hale's medical issues have existed for an extended period of

time according to the filings made in numerous cases before this Court over the

past decade.  Yet, while he continues to practice, and travel regularly between

Idaho and Utah, the medical issues consistently are raised at the very last minute

to justify nonappearance at or vacation of scheduled hearings.  His credibility on

the "emergency medical continuance" argument is not strong.

The Court denied Hale's motion, Doc. No. 74, and conducted the hearing

on April 28 as scheduled.  That ruling is reaffirmed.

### 3.    Motion to stay

The renewed motion to stay the hearing alluded again to the existence of

the criminal case in the federal district court in Utah against Hale – a case that

---

[32]  Hale's Continuance Motion of April 18, Doc. No. 71, sought a vacation of the hearing
on the contention that, on April 28, Hale had a medical appointment in Utah.

[33]  *See*, *e.g.*, Jones Decision at 7 (failure to appear at February 2002 hearing); at 8 (failure
to appear at December 12, 2002 status conference because he was feeling "extremely disoriented
and . . . forced to seek medical assistance); at 10-11 (failure to appear at October 7, 2003
hearing).  In regard to the latter, Hale filed – in Pocatello on October 5 – pleadings contending
that medical ailments made "it almost impossible to travel" but also asserting that he would be in
Utah on October 7, the day of hearing, rather than in Boise.  *Id.* at n.13.

MEMORANDUM OF DECISION - 24

involves alleged criminal conduct by Hale related to his own personal bankruptcy

case. Many assertions and contentions related to the criminal case were addressed

in the Court's pre-hearing ruling denying Hale's Continuance Motion. *See* Doc.

No. 73 at 3-5, 6-8. The renewed motion suggests, in essence, that no hearing

could be conducted in this Court on the Sanction Motion until the criminal process

in Utah is fully concluded, since any testimony or evidence related to Hale's

credibility or veracity might be used by the government in the criminal case.

As noted in the Court's decision, Doc. No. 73, there is no right of a

criminal defendant to stay all civil litigation simply because there is a criminal

matter pending. Indeed, as this Court there ruled, an assertion of the privilege

against self-incrimination cannot be made as a blanket objection to being called to

the stand. The privilege must be asserted on a question-by-question basis. There

is no merit to the idea that this Court must suspend all proceedings on the Sanction

Motion until the criminal process has come to a conclusion. *See id.* at 6-8.[34]

Hale's motion, Doc. No. 76, was therefore denied at the time of hearing.

That ruling is reaffirmed.

---

[34] Hale also argued in this motion that the setting in February of an April 28 hearing was in contemplation of the criminal trial being tried and concluded before such date. Doc. No. 76 ("The setting of the [April 28] trial in this matter was predicated on my need to hold this trial after the criminal trial.") While that may have been Hale's motivation, it was not a matter raised at the February, 2009 scheduling hearing and therefore was not a condition the Court agreed controlled the setting of the hearing. At the February scheduling hearing, Hale stated only that he was "tied up with trial work" in March and he would need to focus on neglected university research responsibilities until mid-April.

MEMORANDUM OF DECISION - 25

**4.      Motion to recuse, vacate hearing, and demand for jury trial**

Hale's last motion filed on the eve of hearing is, in many regards, a hodgepodge of motions made, and denied, in previous cases, including *Jones*.  In fact, the allegations regarding recusal are virtually identical to those filed, and twice rejected by this Court, in *Jones*.  *See* Jones Decision at 21 (rejecting such claims, and noting they were the same as those previously rejected in the decision reported as *Jones*, 2002 WL 818275, at *2-5, and further noting they repeated the allegations raised and rejected in *Castorena*, a ruling affirmed by the BAP on appeal which found such allegations "legally insufficient."  *See Baker* at 20-21.)

The jury trial demand raised in connection with the Sanction Motion is also effectively the same contention as that raised and rejected in *Jones*.  2002 WL 818275 at *5-7.  That ruling was affirmed by the Ninth Circuit.  *Hale v. United States Tr.*, 509 F.3d at 1146-47.  And a similar demand was raised, and rejected, in *Castorena*.  The BAP affirmed that ruling on appeal.  *See Baker*.  *Accord Demos v. Brown (In re Graves)*, 279 B.R. 266, 271-72 (9th Cir. BAP 2002) (holding that a bankruptcy petition preparer had no right to jury trial in equitable proceeding to enjoin certain conduct).

All these matters were previously raised and rejected by this Court, and ultimately those rulings were affirmed on appeal.  Hale did not present anything new.  Indeed, much was a verbatim replication of earlier unsuccessful motions.

MEMORANDUM OF DECISION - 26

Hale's motion, Doc. No. 77, was denied.  That ruling is reaffirmed.

### B.    The Sanction Motion

The UST sought two remedies in its Sanction Motion.  First, under
§ 329(b), the UST sought an order requiring disgorgement of the $800.00 received
by Hale because it was unreasonable and on the basis of inadequate disclosure.
Second, the UST sought an order imposing sanctions, under the Court's inherent
authority, for Hale's misconduct in the Browns' case and his willful and knowing
failure to comply with the restrictions on his practice imposed in *Jones*.  The
suggested sanctions included a monetary sanction sufficient to deter continuing
misconduct and imposition of further limitations on Hale's ability to practice in
this Court.  *See* Doc. No. 43 at 5-6.  The UST also requested "such other relief as
the Court deems just and proper."  *Id.*

In addition, the Court's Notice advised Hale that the Court could consider
and impose any and all sanctions and/or grant such other relief as available under
its inherent authority and § 105(a).  He was given notice that such sanctions might
include disbarment from practice before this Court.  He was advised that no
sanctions would be imposed until after submission of evidence on April 28 and the
Court's consideration of the arguments of the parties presented at such hearing.
Doc. No. 66.[35]

---

[35]  Hale raised arguments regarding the Court's Notice in his Continuance Motion, Doc
(continued...)

MEMORANDUM OF DECISION - 27

### 1.    Relief under § 329(b)

Under § 329(b) this Court may cancel fee agreements and order the return of moneys paid if it determines the fee was unreasonable.  Here, the record is more than adequate to support a conclusion that all the fees charged the Browns were unreasonable given what Hale did, how he did it, and what he did not do.  Jones Decision at 24-26.[36]  *See also Castorena*, 270 B.R. at 514-31.

Because the fees of $800.00 were not shown to be reasonable and, on the evidence, are determined by the Court to be unreasonable, the fee agreement is cancelled.  The Court further finds and concludes all fees would be required to be disgorged.  However, Hale's Dismissal Motion, Doc. No. 70, asserts that Hale already repaid $800.00 to the Browns by money order.  At the commencement of the hearing, the UST indicated, and the Browns' attorney, Gabert, confirmed, that Gabert was holding certified funds in the amount of $800.00.  Gabert indicated, on behalf of the Browns, that those funds would be returned to the relative who had advanced them to the Browns, and that he would advise the UST when that was accomplished.  The UST acknowledged that Hale's $800.00 payment eliminated the Sanction Motion's § 329(b) request for disgorgement of fees.

---

[35] (...continued)
No. 71.  They were considered and denied by the Court.  Doc. No. 73 at 8-10.

[36]  As in *Jones*, the evidence supports the conclusion that Hale also violated multiple provisions of the Idaho Rules of Professional Conduct in regard to his "representation" of the Browns.  *Id.* at 26-27.

MEMORANDUM OF DECISION - 28

Based on the comments of the UST and the representations of the Browns'

counsel that funds have been tendered, the § 329(b) issue is concluded with the

entry of the foregoing findings and conclusions.

### 2. Sanctions under the Court's inherent authority and § 105(a)

### a. Monetary sanction

The UST sought imposition of a monetary sanction "in an amount that will

deter future misconduct."  Sanction Motion at 5.  There are a couple of aspects to

this request that should be evaluated.

First, as noted in *Jones*, monetary sanctions have proven less than adequate

to encourage Hale's compliance with his ethical and professional duties, and

"[n]either the Court's prior decisions nor these economic consequences have had

appreciable impact on subsequent conduct."  Jones Decision at 30.[37]  There is

nothing presented in the record in this case that would suggest monetary sanctions

are likely to alter Hale's approach toward representation of bankruptcy debtors or

"deter future misconduct."[38]

---

[37]  The Jones Decision and related order required Hale to pay a sanction of $2,000.00 to
the UST, and to certify by affidavit that this was accomplished.  No such affidavit was ever filed
in Case No. 01-02853, and the UST has not indicated whether the sanction was ever paid.  There
is no proof Hale complied with this Court's order.  Indeed, it appears safe to assume that if the
injunction in *Jones* regarding limits on Hale's practice was ignored from 2004 on,
notwithstanding absence of stay and the Ninth Circuit's affirmation, the payment requirement to
the UST was likewise ignored.

[38]  As one example of Hale's position and intentions, the Court notes that Hale asserted in
one April 27 filing that: "The 'unconstitutional' order of April 6, 2004, is now being used to

(continued...)

MEMORANDUM OF DECISION - 29

Second, there is a question of what type of sanction a monetary award would constitute. Obviously, monetary sanctions can operate not only to encourage proper conduct, they can also be used to compensate parties or punish prior improper conduct.[39] The types of sanctions a bankruptcy court may impose has been addressed by the Ninth Circuit.

The Ninth Circuit recognized that bankruptcy courts have the power to sanction pursuant to their civil contempt authority under § 105(a) and their inherent authority. In *Lehtinen*, 564 F.3d at 1058, the Circuit stated:

> A bankruptcy court's inherent power allows it to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. It also "allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics."

*Id.* (citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196-97 (9th Cir. 2003)). Under civil contempt authority, the Court may remedy a violation of a specific order. Under inherent authority, it may sanction a broader range of conduct, but must also make an explicit finding of bad faith or willful misconduct, *i.e.*, something more egregious than mere negligence or recklessness. *Id.*

The preconditions for sanctions under either source of authority are here

---

[38] (...continued)
tortiously interfere with my right to contract with a debtor, and the debtor's right to contract for unbundled services." Doc. No. 77 at 6.

[39]   In *Hale v. United States Tr.*, the Ninth Circuit affirmed this Court's imposition of sanctions. 509 F.3d at 1148-49. Its discussion focused on the injunctive aspects of the Jones Decision, but the Ninth Circuit was also aware of the monetary sanction of $2,000 in favor of the UST. *Id.* at 1144.

MEMORANDUM OF DECISION - 30

met.  Hale violated, repeatedly, a specific and express order entered in *Jones* in 2004.  And the record supports the conclusion that Hale's conduct was done in bad faith and was willful, rather than merely negligent or reckless.

However, "like the bankruptcy court's civil contempt authority, the inherent sanction authority 'does not authorize significant punitive damages.'" *Lehtinen*, 564 F.3d at 1059 (quoting *Dyer*, 322 F.3d at 1197).  *Dyer* recognized that "[c]ivil penalties must either be compensatory or designed to coerce compliance."  322 F.3d at 1192.  Thus, "'a flat unconditional fine totaling even as little as $50' could be [a] criminal [sanction] 'if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance,' and the fine is not compensatory."  *Id.* (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137-38 (9th Cir. 2001)).  The fine at issue in *Dyer* "was neither intended to coerce compliance nor intended to compensate the Trustee for actual damages.  It was therefore a criminal contempt sanction."  *Id.*[40]

For a licensed attorney and officer of the court to ignore an injunction on his conduct, one never stayed and ultimately affirmed, is clearly improper.  Hale violated an express order.  His misconduct was willful and in bad faith.  However, a monetary sanction for such behavior would amount to a criminal contempt

---

[40] *Dyer* noted that "relatively mild" non-compensatory fines may be allowable under some circumstances, but left for another day the question of what would be a "serious" punitive sanction.  *Id.* at 1193-94.

MEMORANDUM OF DECISION - 31

sanction under *Dyer* because Hale would not be able to "reduce or avoid the fine through compliance." 322 F.3d at 1192. Nor did the UST request or establish a sanction that would be compensatory in nature.

This Court's entry of a monetary sanction could raise issues under the authorities analyzed above. The Court concludes that no monetary sanction will be imposed.

### b.    Other sanctions

*Lehtinen* involved a bankruptcy court's suspension of an attorney for a period of three months. 564 F.3d at 1057. The Ninth Circuit recognized that suspension of the attorney not only addressed the attorney's conduct, but that the attorney was not able to reduce or avoid the sanction through compliance. *Id.* at 1059. However, the Ninth Circuit concluded that:

> . . . a lawyer disciplinary proceeding is not a criminal proceeding. Attorney suspension is "neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent." *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005) (internal quotation marks omitted). "[D]isbarment proceedings are not for the purpose of punishment but to maintain the integrity of the courts and the profession." *Patterson v. Standing Comm. of Discipline to Bar of the U.S. Dist. Court of Or. (In re Patterson)*, 176 F.2d 966, 968 n.1 (9th Cir. 1949).

564 F.3d at 1059. In that case, procedural due process was accorded to the attorney as he received notice of the alleged misconduct and the basis for the court's sanction authority. *Id.* at 1060-61. The bankruptcy court made the requisite finding of bad faith and willful misconduct required for use of its

MEMORANDUM OF DECISION - 32

inherent sanction power. *Id.* at 1161. The bankruptcy court's suspension was upheld.

There is no doubt that the same preconditions are met in the instant case. Hale received notice through the UST's Sanction Motion of the alleged misconduct. That misconduct embraces not just the actions taken in regard to, and the harm caused, the Browns. It also expressly included the continued violation of the injunctive order entered in *Jones*.

The UST's Sanction Motion cited the inherent power and authority of the Court. Thus, Hale received adequate notice of the basis of the Sanction Motion. And this Court's Notice certainly clarified, to the extent arguably necessary, the source of the authority as well as the range of potential consequences.

The Court finds and concludes that Hale's conduct was in bad faith and constituted willful misconduct. The record and evidence fully support that determination. Hale has continued his prohibited practices not just while the *Jones* appeal was pending – without stay – but he has also pursued the same course from and after the Ninth Circuit's ruling in December 2007. *See Hale v. United States Tr.*, 509 F.3d 1139. At least 26 cases filed in 2008 reflect continuation of the enjoined practices and behavior. Hale's conduct with and regarding the Browns, on the evidence, mirrors in virtually every relevant aspect that established by the evidence in *Jones*. The filings in these 2008 cases include bankruptcy petitions that Hale failed and refused to sign as counsel. He

MEMORANDUM OF DECISION - 33

disavowed in each his role as attorney, and he refused to enter into the required written agreement with his clients mandated by the Jones Decision and order.  His Rule 2016(b) statements perpetuated an approach that was not only criticized in *Castorena* but expressly barred in *Jones*.  And Hale's filings in the Brown case, as the Sanction Motion hearing approached, reflect he had and has no intention of conforming his practices to the requirements of the Jones Decision and order.

The Court must be concerned not just with the Browns and the other debtors in the cases filed in 2008, it must also consider the substantial likelihood of injury to debtors in cases Hale would file in the future.  As the Ninth Circuit observed, "[Hale] had an extensive history – and an ongoing practice – of . . . violations."  509 F.3d at 1148.  That history and practice continued after the Ninth Circuit ruled.  That it would continue from this point forward seems all too certain.

The Court must therefore evaluate sanctions in light of Hale's bad faith and willful misconduct but also in view of ongoing injury to the public.  Neither economic nor injunctive sanctions have been effective.  The Court turns, therefore, to the question of disbarment from federal practice in this District, or suspension (*i.e.*, a temporary disbarment) from such practice.

There is absolutely nothing in the record to suggest a temporary suspension of Hale's right to practice in the federal courts in this District would result in his post-suspension compliance with this Court's previous sanction order in *Jones* or

MEMORANDUM OF DECISION - 34

any other order the Court might enter addressing how he practices law.  Hale has

made clear for a significant period of time that his intention is not to comply with

this Court's rulings and orders.

The Court therefore concludes that the appropriate relief and sanction under

the circumstances is disbarment.

*Lehtinen* recognized that:

"In the federal system there is no uniform procedure for disciplinary
proceedings.  The individual judicial districts are free to define the
rules to be followed and the grounds for punishment."

564 F.3d at 1062 (quoting *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198

(9th Cir. 1999)).  In the District of Idaho, that process is defined in Dist. Idaho

Loc. Civ. R. 83.5, which this Court's LBR 9010.1(h) follows and incorporates by

reference.  Under Rule 83.5(b)(4), original (non-reciprocal) disciplinary

proceedings require several procedural steps, commencing with a written report

and recommendation for the initiation of disciplinary proceedings.  The

subsequent steps in the process are sufficiently laid out in the Rule and need not be

repeated here.[41]

---

[41]  This Court appreciates that Dist. Idaho Loc. Civ. R. 83.5(7) provides: "Nothing in this
[local] rule is intended to limit the inherent authority of any judge of this court to suspend an
attorney from practicing before that judge on a case by case basis, after appropriate notice and an
opportunity to be heard."  However, Hale's particular brand of misconduct does not lend itself to
use of this provision.  The problems Hale causes his clients are not based on how he practices in
hearings before the Court, which might be remedied in an appropriate case by suspending him
from doing so.  Rather, it is Hale's refusal to appear in the case and perform the duties imposed
upon him by statute, rule and decision that is the problem.  "Suspending" him from appearing in a
case achieves through sanction what Hale tries to achieve through his "contract" with debtors –

(continued...)

MEMORANDUM OF DECISION - 35

The Court, having determined that discipline in the nature of disbarment is warranted, will prepare and issue the required recommendation. The instant decision, the order thereon, and the record in this case, shall be provided with such recommendation.

As that rule-required process moves forward, the Court emphasizes that the ruling made in *Jones* and affirmed by the Ninth Circuit remains in force and effective. The Court would expect the UST, upon identifying *any* case filed by pro se debtors in which Hale provided pre-filing assistance in violation of the Jones Decision and order, to immediately bring a motion for cancellation of any fee agreement and disgorgement of fees under § 329(b). Such expectation should not be interpreted as restricting the UST from bringing any other and further motions as it deems warranted.

**CONCLUSION**

The UST's Sanction Motion is granted as set forth above. An appropriate order will be entered. A written report and recommendation under Dist. Idaho Loc. Civ. R. 83.5(b)(4) will also be issued.

---

[41] (...continued)
elimination of the obligation to appear and actively represent his clients in the bankruptcy case.

MEMORANDUM OF DECISION - 36

DATED:  June 12, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 37

## CERTIFICATE OF SERVICE

  A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

Tom Hale, Esq.
POB 416
Shelley, ID 83274

Tom Hale, Esq.
655 S. 6th St.
Pocatello, ID 83201

Case No.  08-40638-JDP

Dated: June 12, 2009


_____/s/_____
Suzanne Hickok
Law Clerk to Chief Judge Myers

MEMORANDUM OF DECISION - 38